UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LEV AVERBAKH           )<br>                             )<br>    Plaintiff,      )<br>                             )<br>    v.                     )<br>                             )<br>MICHAEL CHERTOFF, Secretary,   )<br>Department of Homeland Security, *et al.* , )<br>                             )<br>    Defendants.    ) | No. 08 C 144<br><br>Judge Norgle |

**DEFENDANTS' POSITION PAPER
ON THE COURT'S JURISDICTION AND REMAND**

Defendants, by Patrick J. Fitzgerald, United States Attorney for the Northern District of Illinois, pursuant to this court's order of January 10, 2008, files its position that the district court has subject matter jurisdiction over the complaint, but nevertheless should remand the case to agency for its determination upon completion of the background check.

**Introduction**

As alleged in the complaint, in 1993, Lev Averbakh, a citizen and national of Russia, became a lawful permanent resident of the United States. Complaint, ¶ 3. After filing a petition for naturalization, Averbakh had an interview in November 2004. *Id.*, ¶¶ 8-9. In the three years since, a decision on Averbakh's petition has been pending the completion of the required background check. *Id.*, ¶¶ 10-11, 15; 8 C.F.R. § 335.2(b).

**Argument**

The court requested the parties brief the issue of whether there was subject matter jurisdiction over this case in light of the opinions in *Sharif v. Chertoff*, 497 F.Supp.2d 928 (N.D. Ill. 2007) and *Zeng v. Chertoff*, 2007 U.S. Dist. LEXIS 67307 (D. N.D. Sept. 11, 2007). As both of

those cases address district court jurisdiction over adjustment of status cases, that is, application for permanent resident status, and the instant case is one addressing a petition for naturalization seeking United States citizenship, the rationale and the applicable statutes are not relevant here.

This case is brought under 8 U.S.C. § 1447(b), which provides jurisdiction in the district court over naturalization petitions that have not be adjudicated within 120 days after completion of the examination. The district court "may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter." 8 U.S.C. § 1447(b).

Defendants do not dispute that the court has jurisdiction over the complaint. However, defendants do not believe that under these circumstances that is appropriate for this court to "determine the matter." Instead defendants direct this court to the decision of another judge of this court in *Antonishin v. Keisler*, No. 06 C 2518, 2007 WL 2788841 (N.D. Ill. Sept. 20, 2007), *see* attached. In *Antonishin* , the plaintiff's application for citizenship was pending more than 120 days waiting for the results of the background check and he brought a case is the district court. While the district court found the it had jurisdiction to consider the matter, *id.* at \*3-4, the court went on to determine that it was not best course for the court to directly determine the matter. *Id.* at \*4. Instead, the court, "consistent with the 'vast majority' of courts that have addressed the issue," remanded the case back to the Bureau of Citizenship and Immigration Services for the agency adjudicate the petition upon receipt of the results of the background check. *Id.* The *Antonishin* court reasoned that "USCIS possesses expertise in this area and should be given the opportunity to adjudicate plaintiffs' applications in the first instance." *Id.*, citing *Immigration & Naturalization Service v. Ventura*, 537 U.S. 12, 16-17 (2002) (remand is generally the better course and "[t]his principle has obvious importance in the immigration context."). In addition, the *Antonishin* court

refused to impose any particular deadline for adjudication of the plaintiff's application on remand. *Id.* That court stated that once the background check was complete "there should be no impediment to prompt resolution" of the application, and if for some reason the application is not resolved within a reasonable time after completion of the name check, plaintiff again has recourse to appropriate judicial relief under § 1447(b). *Id.*

The identical situation is present here. As the court stated in *Antonishin*, the agency "possesses [the] expertise in this area" and should be the ones to address the application in the first instance. This is especially applicable when the court in adjudicating the petition itself would be acting without the benefit of information of the applicant's background and potential national security information before considering a grant of citizenship. Moreover, by considering the application for citizenship on the merits without benefit of the result of the background investigation, the court would engage in the business of reordering the agency's priorities, jeopardizing national security or the public safety, and by ordering this application to be adjudicated out of order would be prejudicing the many other persons who met the requirements for naturalization before plaintiff and has patiently been waiting to have their case adjudicated.

**Conclusion**

Based on the foregoing, defendants request that this case be remanded to the agency for its determination of the petition for naturalization.

        Respectfully submitted,

        PATRICK J. FITZGERALD
        United States Attorney

        By:   s/ James M. Kuhn, Sr.
          JAMES M. KUHN, SR.
          Assistant United States Attorney
          219 South Dearborn, Room 500
          Chicago, Illinois 60604
          (312) 353-1877
          james.kuhn @ usdoj.gov

Antonishin v. Keisler
N.D.Ill.,2007      2007 WL 2788841
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.
Sergey ANTONISHIN, et al. individually and on behalf of a class of similarly situated persons, Plaintiffs,
v.
Peter D. KEISLER, et al., Defendants.
**No. 06 CV 2518.**

Sept. 20, 2007.

*MEMORANDUM OPINION*

JOHN F. **GRADY**, United States District Judge.

***1** Defendants have moved to dismiss plaintiffs' complaint pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6). Alternatively, defendants ask us to remand the named plaintiffs' applications to the United States Citizenship and Immigration Services ("USCIS") pursuant to 8 U.S.C. § 1447(b). For the reasons explained below, we grant defendants' motion in part and deny it in part.

*BACKGROUND*

Plaintiffs are lawful permanent residents of the United States who have applied to be naturalized as United States citizens. (Compl.¶ 3.) As part of the application review process, USCIS conducts backgrounds checks of each applicant. (*Id.* at ¶ 42.)[FN1] These background checks include: (a) an FBI fingerprint check; (b) a search of the Interagency Border Inspection System ("IBIS"), which contains records information "from more than 20 federal law enforcement agencies;" and (c) an FBI "name check," which is "run against FBI investigative databases containing information that is not necessarily revealed by the FBI's fingerprint check or IBIS."(*Id.* at ¶ 47.)The name and fingerprint checks were first implemented in 1998, after Congress prohibited USCIS from using any appropriated funds to adjudicate any naturalization application without first confirming that the FBI had completed a "full criminal background check" of the applicant. Department of Justice Appropriations Act of 1998, Pub.L. No. 105-119, Title I, Nov. 26, 1997, 111 Stat. 2448. The FBI, in turn, performs the background checks at USCIS' request on a "fee-for-service" basis "according to USCIS-defined standards." *See* Citizenship and Immigration Services Ombudsman Annual Report 2007 (hereinafter "Ombudsman Report"), attached as Exhibit 2 to Plaintiffs' Second Notice of New Authority, at 38.

> FN1. Defendants have attached lengthy declarations to their motion to dismiss describing the background check, generally. We have excluded these materials in ruling on defendants' motion to dismiss except for those portions of defendants' declarations that plaintiffs cite in their Second Amended Complaint. *See, e.g.,* Compl. ¶ 48; *see also* Venture Associates Corp. v. Zenith Data Systems Corp., 987 F.2d 429, 431 (7th Cir.1993) ( "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.").

When USCIS first implemented the name-check requirement in late 1997, applicant names were checked against the FBI's "main" files only. (Compl.¶¶ 44, 47-48.) In November 2002, without prior notice and without accepting public comment, USCIS and the FBI agreed to expand the name check to include "references" to the applicant's name in the FBI's files. (Compl. ¶ 48; Ombudsman Report at 28 ("[T]he FBI provides information to USCIS regarding anyone who is the principal subject of an investigation or is a person referenced in a file.")) The new search criterion increased the amount of time required to complete certain name checks and has caused delays in the review process, generally. (Compl. ¶ 49; Pl. Opp'n at 20).

Before receiving the results of plaintiffs' background checks, USCIS interviewed each plaintiff to ascertain his or her command of English and to address any other concerns that USCIS might have about his or her application. (Compl.¶ 31.) Plaintiffs cite Department of Homeland Security ("DHS") data indicating that USCIS adjudicates more than 50% of all cases on the same day that it interviews the applicant. *Id.* at ¶ 33.Approximately 90% of all applications are adjudicated within 120 days of the interview. *Id.* Plaintiffs fall within the remaining 10%: although all of the plaintiffs' interviews were completed before January 5, 2006, to date the USCIS has not adjudicated their applications. *Id.* at ¶¶ 22-26.

**\*2** Plaintiffs have filed a six count complaint. Counts I-V are brought on behalf of a putative class of applicants

in Illinois, Indiana and Wisconsin. Count I, brought against the "Immigration Defendants" (DHS, USCIS, Dorochoff and Chertoff), alleges that systematic delays in the naturalization application system violate the Administrative Procedures Act ("APA"). Count II, also brought against the Immigration Defendants, asserts a claim for mandamus relief for failing to adjudicate plaintiffs' applications in a "timely manner." Count III, brought against the "FBI Defendants" (Mueller and the FBI), asserts a claim for mandamus relief for failure to complete name checks in a timely manner. Count IV alleges that USCIS failed to follow required notice and comment procedures when it adopted the name check requirement. Count V alleges that the delays that plaintiffs have experienced relative to other applicants violates the equal protection component of the Fifth Amendment. In Count VI, brought by the named plaintiffs on their own behalf, plaintiffs ask us to adjudicate their naturalization applications pursuant to 8 U.S.C. § 1447(b).

### DISCUSSION

**I.** *Motion to Dismiss Standard*

When considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, a district court accepts as true all well-pled factual allegations and draws reasonable inferences from the allegations in favor of the plaintiff. *Capitol Leasing Co. v. FDIC,* 999 F.2d 188, 191 (7th Cir.1993). The court may also look beyond the allegations of the complaint and consider affidavits and other documentary evidence to determine whether subject matter jurisdiction exists. *Id.*

The purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits. 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356, at 354 (3d ed.2004). When evaluating such a motion, the court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Hentosh v. Herman M. Finch Univ. of Health Sciences,* 167 F.3d 1170, 1173 (7th Cir.1999); *Jang v. A.M. Miller & Assocs.,* 122 F.3d 480, 483 (7th Cir.1997).

**II.** *Claims Brought On Behalf of the Named Plaintiffs Only*

**A.** *Subject Matter Jurisdiction*

Defendants contend that this court lacks jurisdiction to adjudicate the plaintiffs' applications. Congress has expressly limited federal courts' jurisdiction to adjudicate naturalization applications:

If there is a failure to make a determination under section 1446 before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.

**\*3**8 U.S.C. § 1447(b). Whether we have jurisdiction turns on the proper interpretation of "examination," which is not defined in the statute. Defendants contend that "examination" means the entire investigative process prior to adjudication, including the background checks. The 120-day period has not been triggered, they argue, because plaintiffs' background checks are not complete. Plaintiffs, for their part, maintain that "examination" refers to the USCIS interview. Considerably more than 120 days elapsed after plaintiffs' interviews before they filed their complaint.

Defendants rely primarily on *Danilov v. Aguirre,* 370 F.Supp.2d 441 (E.D.Va.2005) to support their interpretation of "examination." [FN2] In *Danilov,* the court concluded that § 1446 ("Investigation of applicants; examination of applications") describes a "process to gather information concerning the applicant," not a "single event." *Id.* at 443. The court reached this conclusion based upon provisions of § 1446 authorizing the examiner to issue subpoenas requiring witness testimony and document production. *Id.* Moreover, 8 C.F.R. § 335.2 prohibits the USCIS from scheduling an applicant's "initial examination" before the FBI provides a "definitive response" concerning the applicant's background check. *Id.* at 444. The *Danilov* court reasoned, somewhat circularly, that the fact that the plaintiff's interview occurred before USCIS received a response from the FBI meant that the interview was not the "examination." *Id.*

> FN2. Defendants also rely on *Walji v. Gonzales,* --- F.3d ----, 2007 WL 174911 (5th Cir.2007), which reached the same conclusion as the court in *Danilov,* though for different reasons.

However, the Fifth Circuit has since withdrawn its opinion, and on September 14, 2007 issued a superseding opinion in which it reversed course and held that an applicant's interview is the "examination" for purposes of § 1447(b).*See Walji v. Gonzales,* No. 06-20397, at 16 (5th Cir. Sept. 14, 2007) (attached as Ex. A to Plaintiff's Notice of Fifth Circuit Reversal of Its Walji Opinion).

We are not persuaded by the reasoning in *Danilov* to part ways with the majority view that the "examination" is the applicant's interview. *See Repeshchuk v. Gonzales,* Civ. No. 07-2017 (RHK/AJB), 2007 WL 2361450, *2 (Aug. 15, 2007) (noting that an "overwhelming majority of federal courts" have rejected the reasoning in *Danilov* ). The fact that § 1446 authorizes the examiner to issue subpoenas "[f]or purposes of" conducting the examination does not mean that the examination itself is not a discrete event. Later in the same section the statute provides that the examiner "shall, *at the examination,* inform the applicant of the remedies available to the applicant under section 1447 of this title."*Id.* (emphasis added). Other provisions of the statute and implementing regulations also support interpreting "examination" to mean the applicant's interview. Section 1447(b) refers to "the date on which the examination is conducted pursuant to section 1446," strongly implying that the "examination" is a discrete event and not an ongoing process. *See*8 U.S.C. § 1447(b); *El-Daour v. Chertoff,* 417 F.Supp.2d 679, 681 (W.D.Pa.2005).*Danilov* is also difficult to square with 8 C.F.R. § 335.2, which equates the "examination" with the "interview" conducted by the Service officer:

> Subsequent to the filing of an application for naturalization, each applicant shall *appear in person before a Service officer designated to conduct examinations* pursuant to § 335.1 of this chapter.
> **\*4** ...
> Prior to the *beginning of the examination,* the Service officer shall make known to the applicant the official capacity in which the officer is conducting the examination....*The Service officer shall maintain, for the record, brief notations of the examination for naturalization.*At a minimum, the notations shall include a record of the test administered to the applicant on English literacy and basic knowledge of the history and government of the United States. The Service officer may have a stenographic, mechanical, electronic, or videotaped transcript made, or may prepare an affidavit covering the testimony of the applicant.

8 C.F.R. § 335.2 (emphasis added).Section 335.2(b) also provides that USCIS may schedule the "examination" only after receiving a "definitive response" from the FBI. *Id.* at § 335.2(b).FN3 This procedure does not make sense if the background check is part of, not separate from, the examination. *See Khelifa v. Chertoff,* 433 F.Supp.2d 836, 841 (E.D.Mich.2006).

> FN3. In this case, and in numerous other cases, the USCIS disregarded its own regulation and performed the interview without first obtaining the a "definitive response" from the FBI. *See*8 C.F.R § 335.2; *see also Alhamedi v. Gonzales,* No. 07 Civ. 2541(JGK), 2007 WL 1573935, *4 (S.D.N.Y. May 30, 2007) ("CIS could have avoided the present problem by following its own regulations and postponing its "examination" of Alhamedi until the FBI had cleared his name, but that path was not taken.").

Consistent with the great majority of courts to consider this issue, we conclude that the statute confers federal court jurisdiction 120 days after the applicant's USCIS interview. Accordingly, we have subject matter jurisdiction over plaintiffs' naturalization applications.

**B.** *Remand*

Section 1447(b) authorizes us to "either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter."8 U.S.C. § 1447(b). We conclude that remand is appropriate, consistent with the "vast majority" of courts that have addressed the issue.*Manzoor v. Chertoff,* 472 F.Supp.2d 801, 810 (E.D.Va.2007). USCIS possesses expertise in this area and should be given the opportunity to adjudicate plaintiffs' applications in the first instance. *See Immigration & Naturalization Service v. Ventura,* 537 U.S. 12, 16-17 (2002) (remand is generally the better course and "[t]his principle has obvious importance in the immigration context.").FN4 Moreover, we decline to impose any particular deadline for adjudication of plaintiff's applications on remand. Once plaintiffs' name checks are complete "there should be no impediment to prompt resolution" of their applications. *Walji,* 06-cv-02518, at 16. If for some reason their applications are not resolved within a reasonable time after completion of the name checks, plaintiffs again have recourse to appropriate judicial relief under § 1447(b).

FN4. Because we have determined that remand is appropriate, we do not reach defendants' argument that plaintiffs' claims should be severed before conducting individualized hearings to adjudicate their applications. *See* Mot. to Dismiss at 12.

### III. *Claims Brought On Behalf of the Class*

**A.** *The Timing of Defendants' Dispositive Motion*

As a threshold matter, we note that defendants have filed their motion to dismiss even though plaintiffs have not yet moved for class certification. Generally speaking, decisions on the merits of a plaintiff's claim should be made after determining whether to grant or deny class certification. *See* Fed.R.Civ.P. 23(c) ("When a person sues or is sued as a representative of a class, the court must-at an early practicable time-determine by order whether to certify the action as a class action."); *Mira v. Nuclear Measurements Corp.,* 107 F.3d 466, 475 (7th Cir.1997). However, the Seventh Circuit has recognized that in certain circumstances district courts may proceed to rule on a dispositive motion without first ruling on class certification. *See Cowen v. Bank United of Texas, FSB,* 70 F.3d 937, 941 (7th Cir.1995). As the Court noted in *Cowen,* "[c]lass actions are expensive to defend. One way to try to knock one off at low cost is to seek summary judgment before the suit is certified for class action."*Id.* The Court in *Cowen* concluded that this tactic is proper, *id.,* and we see no reason it would not be proper in connection with a motion to dismiss. *See, e.g., Griffin v. Humana Wis. Health Org. Ins. Corp.,* No. 98-C-0001, 2000 WL 35572299, *2 (E.D. Wis. June 26, 2000) (applying the principle in *Cowen* to a motion to dismiss). Accordingly, we proceed to consider defendants' motion to dismiss those Counts brought on behalf of a putative class of applicants.

**B.** *APA and Mandamus Claims Against USCIS*

**\*5** Plaintiffs assert claims against USCIS for relief pursuant to the APA and for mandamus. In Count I(APA), plaintiffs allege that USCIS has engaged in a "pattern and practice of failing to adjudicate naturalizations within a reasonable period of time, which practice should be corrected."(Compl.¶ 55.) Count II requests mandamus relief for essentially the same conduct-failure to adjudicate applications in a "timely manner." (Compl.¶¶ 56-59.) In their prayer for relief, plaintiffs ask us to order defendants to adjudicate all naturalization applications within 120 days of the examination. (Compl.¶ G.) By its terms, such an order would require USCIS to proceed even without a "definitive response" from the FBI. Under the APA, the "only agency action that can be compelled under the APA is action legally required."*Norton v. S. Utah Wilderness Alliance,* 542 U.S. 55, 63 (2004). Plaintiffs must satisfy a similar requirement for mandamus relief. *Scalise v.. Thornburgh,* 891 F.2d 640, 648 (7th Cir.1989), cert. denied, 494 U.S. 1083 (1990) (The defendant must have "a plainly-defined and peremptory duty to do the act in question"). USCIS has no duty to adjudicate a naturalization application before receiving a "definitive response" from the FBI that the applicant's background check is complete. Indeed, it is prohibited from doing so. Department of Justice Appropriations Act of 1998, Pub.L. No. 105-119, Title I, Nov. 26, 1997, 111 Stat. 2448; 8 C.F.R. § 335.2(b) .FN5

FN5. Plaintiffs imply that this problem would largely resolve itself if we eliminated the name check requirement, as it is the chief source of the delays. For the reasons discussed *infra,* we decline to abolish the name check requirement.

In their opposition to defendant's motion to dismiss, plaintiffs ask us to take the somewhat less drastic step of requiring USCIS to request expedited name checks whenever a name check is still pending 120 days after the applicant's examination. USCIS can and does ask the FBI to expedite name checks in limited circumstances.FN6But plaintiffs have not cited any statute or regulation *requiring* USCIS to request expedition under any circumstances. *See Norton,* 542 U.S. at 63;*Scalise,* 891 F.2d at 648 (7th Cir.1989), cert. denied, 494 U.S. 1083 (1990) Congress has set a normative expectation that applications will be adjudicated within 180 days after the application. 8 U.S.C. § 1571. We do not believe that this expectation compels the agency to request expedition when a name check has been pending for a longer period of time. Accordingly, we decline to rewrite USCIS's expedition policy.

FN6. In deciding whether to request an expedited name check, USCIS may consider, among other criteria, "[m]ilitary deployment" and "critical medical conditions." *See* USCIS Clarifies Criteria to Expedite FBI Name Check, available at http://www.uscis.gov/files/pressrelease/ExpediteNameChk022007.pdf. On February 20, 2007, USCIS discontinued its

policy of requesting expedited name checks whenever an applicant filed a federal lawsuit. *Id.* Without expressing an opinion about whether that criterion was appropriate, we note that it is no longer a basis for challenging USCIS's policy.

Finally, we note that plaintiffs have an adequate remedy under § 1447(b).*See Walsh v. United States Dept. of Affairs,* 400 F.3d 535, 537-38 (7th Cir.2005) (APA relief is not available if plaintiff has an adequate legal remedy); *Iddir v. I.N.S.,* 301 F.3d 492, 498 (7th Cir.2002) (mandamus relief is not available if plaintiff has an adequate legal remedy); *cf., Kaplan v. Chertoff,* 481 F.Supp.2d 370, 400 (E.D.Pa.2007) (noting that APA relief may be appropriate "where § 1447 provides no avenue for the court to adjudicate the application."). Under both Counts I and II plaintiffs assert a right to have their applications adjudicated within a reasonable time frame. As previously discussed, we obtained jurisdiction over the adjudication process 120 days after plaintiffs' initial examination. Although we have declined to do so here, this provision authorizes district courts to, among other things, order USCIS to request expedited name checks. Accordingly, plaintiffs need not rely on a general jurisdictional grant to obtain the relief that they seek. *See Bowen v. Massachusetts,* 487 U.S. 879, 903, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988) ( "Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action."); *Alsamir v. United States Citizenship and Immigration Services,* No. 06-cv-01751-WDM-BNB, 2007 WL 1430179, at *2 (D.Colo. May 14, 2007) (concluding that the availability of § 1447(b) review precludes mandamus and APA relief).

**C.** *Claims Against the FBI*

**\*6** The practical effect of accepting jurisdiction and remanding to USCIS may be negligible where, as here, the applicant's name check results are pending. Several courts have remanded to USCIS with directions to both USCIS and the FBI to complete their review within a specified time frame. *See, e.g., Alhamedi v. Gonzales,* No. 07 Civ. 2541(JGK), 2007 WL 1573935, at *4-5 (S.D.N.Y. May 30, 2007). However, Section 1447(b), standing alone, does not authorize us to order the FBI to expedite plaintiff's name checks. *See* 8 U.S.C. § 1447(b) (A court may "either determine the matter or remand the matter, with appropriate instructions, *to the Service* to determine the matter.") (emphasis added). Accordingly, there would have to be some other basis for such an order. We now turn to that issue.

*1. APA Claim Against the FBI*

Plaintiffs contend that we may compel the FBI to expedite its name checks pursuant to APA § 706(1), which requires us to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). However, as we previously discussed, the "only agency action that can be compelled under the APA is action legally required." *Norton,* 542 U.S. at 63. There is no statute or regulation that "expressly imposes a mandatory duty on the FBI to perform background checks." *Kaplan,* 481 F.Supp.2d at 400;*cf. Yakubova v. Chertoff,* 06-CV-3203, at 6 (E.D.N.Y. Nov. 1, 2006) (unpublished opinion attached as Ex. A to Pl. Opp'n) (assuming without analysis that the FBI has a mandatory duty to complete name checks). On this basis, several courts considering APA and mandamus claims in connection with adjustment-of-status requests have concluded that the FBI has no duty to complete background checks.[FN7] Claims against the FBI in connection with naturalization applications are arguably on a different footing, insofar as Pub.L. No. 105-119 explicitly refers to naturalization applications:

> FN7. *See Konchitsky v. Chertoff,* No. C-07-00294 RMW, 2007 WL 2070325, at *6 (N.D.Cal. July 13, 2007) ("[C]ourts squarely addressing the issue of whether they have jurisdiction to compel the FBI to perform name checks in connection with adjustment of status petitions have overwhelmingly concluded that they do not"); *Zaytsev v. Gantner,* No. 04 Civ.7101 WHP, 2004 WL 2251665, at *1 (S.D.N.Y. Sept. 24, 2004) ("The Zaytsevs have pointed to no authority demonstrating that the FBI owes a duty to conduct background checks, and this Court has found no such authority.").

[D]uring fiscal year 1998 and each fiscal year thereafter, none of the funds appropriated or otherwise made available to the Immigration and Naturalization Service shall be used to complete *adjudication of an application for naturalization* unless the Immigration and Naturalization Service has received confirmation from the Federal Bureau of Investigation that a full criminal background check has been completed.

Department of Justice Appropriations Act of 1998, Pub.L. No. 105-119, Title I, Nov. 26, 1997, 111 Stat. 2448 (emphasis added). Congress has further provided that the FBI may establish fees for name-check costs. Pub. Law 105-515, 104 Stat. 2101, 2112 (1990). The court in *Kaplan* concluded that, "[u]nder these limited circumstances," Congress had, "by implication, imposed on the FBI a mandatory duty to complete the background checks." 481 F.Supp.2d at 370.

We are not persuaded by *Kaplan* to infer a mandatory duty under these circumstances. Pub.L. No. 105-119 is addressed to USCIS and establishes conditions that USCIS must satisfy to access appropriated funds. It is at best unclear whether Congress intended to impose any mandatory duty on the FBI. We decline to infer such a duty based on an appropriations measure directed to a different agency. We conclude that plaintiffs have not stated a claim for APA relief against the FBI.

*2. Mandamus Claim Against the FBI*

**\*7** As an alternative basis for compelling the FBI to expedite their name checks, plaintiffs assert a claim for mandamus relief. Mandamus is an "extraordinary remedy" that a court may invoke only when each of three elements is present: (1) the plaintiff has a clear right to the relief he seeks; (2) the defendant has a plainly-defined and peremptory duty to do the act in question; and (3) no other adequate remedy is available. *Scalise,* 891 F.2d at 648. For the reasons discussed in connection with plaintiffs' APA claim, we conclude that the FBI has no "plainly-defined and peremptory duty" to complete the name checks. *See Eldeeb v. Chertoff,* No. 8:07-cv-236-T-17EAJ, 2007 WL 2209231, at *22 (M.D.Fla. July 30, 2007) (dismissing complaint and concluding that the FBI does not owe a "clear" duty to lawful-permanent-resident applicants to process name checks). Accordingly, mandamus is not appropriate.

**D.** *APA Claim Based on Adoption of the "References" Check*

In 1997 Congress prohibited USCIS from using any appropriated funds to adjudicate any naturalization application without first confirming that the FBI had completed a "full criminal background check" of the applicant. Department of Justice Appropriations Act of 1998, Pub.L. No. 105-119, Title I, Nov. 26, 1997, 111 Stat. 2448. In response, USCIS adopted 8 C.F.R. § 335.2(b):

(b) Completion of criminal background checks before examination. The Service will notify applicants for naturalization to appear before a Service officer for initial examination on the naturalization application only after the Service has received a definitive response from the Federal Bureau of Investigation that a full criminal background check of an applicant has been completed. A definitive response that a full criminal background check on an applicant has been completed includes:

(1) Confirmation from the Federal Bureau of Investigation that an applicant does not have an administrative or a criminal record;

(2) Confirmation from the Federal Bureau of Investigation that an applicant has an administrative or a criminal record; or

(3) Confirmation from the Federal Bureau of Investigation that two properly prepared fingerprint cards (Form FD-258) have been determined unclassifiable for the purpose of conducting a criminal background check and have been rejected.

8 C.F.R. § 335.2(b). From 1998 until approximately November 2002, USCIS requested that the FBI search its "main" files only. At that point, USCIS began requesting a broader search for "references" to the applicant's name in FBI files.

Plaintiffs contend that the decision to review "references" was improperly made without notice and comment. *See* 5 U.S.C.A. § 553. "The APA mandates that an agency follow its notice and comment procedures when promulgating" a legislative rule. *Board of Trustees of Knox County Hosp. v. Shalala,* 135 F.3d 493, 500 (7th Cir.1998). A legislative rule "create[s] law, usually implementary to an existing law." *Id.* On the other hand, the APA's notice-and-comment requirement does not apply "to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice." *See* 5 U.S.C.A. § 553(b). Interpretive rules are statements "as to what the administrative officer thinks the statute or regulation means." *Board of Trustees,* 135 F.3d at 501 (internal citation and quotation marks omitted). The

paradigmatic interpretive rule is one which expressly references the statute being interpreted. *Metropolitan School District of Wayne Township, Marion County, Indiana v. Davila,* 969 F.2d 485, 490 (7th Cir.1992). Nevertheless, a rule may be interpretive even if there is no such reference. *See, e.g., Knox,* 135 F.3d at 501 (concluding that the agency's policy statement impliedly interpreted the agency's regulation).

***8** Defendants have not identified a reference to the relevant statute or regulation contemporaneous with expanding the name check program. It is apparent, however, that USCIS was interpreting the scope of the "full criminal background check." [FN8] It did not create a new law, right or duty. *Metropolitan School Dist. Of Wayne Twp., Marioun County, Ind. v. Davila,* 969 F.2d 485, 490 (7th Cir.1992) ("[I]f by its action the agency intends to create new law, rights, or duties, the rule is properly considered to be a legislative rule."). The parameters of a "full criminal background check" are not self-defining. USCIS might well have required a "reference" name check in 1997, when Congress imposed the "full criminal background check" requirement. *See Stepchuk v. Gonzales,* No. C06-570RSL, 2007 WL 185013, at *2 (W.D.Wash. Jan. 18, 2007) ("[T]he FBI's name check may be considered a part of the requirement for a 'full criminal background check.' "). *Shalabi,* 2006 WL 3032413, at *2 ("A 'name check' may certainly be read into the requirement of a full criminal background check."); *cf. Hoctor,* 82 F.3d at 169 (7th Cir.1996) (concluding that the USDA's arbitrary eight-foot fence requirement could not be construed as "interpreting" a regulation concerning the "strength" of such enclosures). The fact that it was implemented in 2002 does not make the change legislative. *Id.* at 491 ("[A]n agency's change in its reading of a statute does not necessarily make the rule announcing the change legislative."). Although delays caused by the name check are significant, the impact is incidental. *Id.* at 493 ("Prevailing authority rejects the proposition that a rule that has substantial impact is necessarily legislative."). We conclude that the "rule" adopted by USCIS was interpretive and was not subject to the APA's notice-and-comment requirement.

> FN8. Defendants do not specify whether USCIS is interpreting the statute or the implementing regulation. In this particular case, the distinction is irrelevant because Pub.L. No. 105-119 does not *authorize* USCIS to require a full criminal background check; it requires it. *Cf. Hoctor v. United States Dept. of Agriculture,* 82 F.3d 165, 169 (7th Cir.1996) (noting that an agency rule that purports to "interpret" a statute authorizing the agency to impose a duty in fact *imposes* such a duty). The question here, then, is: "what is a 'full criminal background check'?"

Plaintiffs also argue that USCIS's interpretation is unreasonable because the name check has delayed "tens of thousands of applications." Pl. Opp'n at 20. The trade-off between prompt adjudication and a thorough background check falls squarely within USCIS's mandate. *Bethlehem Steel Corp. v. Bush,* 918 F.2d 1323, 1327 (7th Cir.1990) (Deferring to the EPA's interpretation of the Superfund Amendment and Reauthorization Act: "The agency's action should be upheld, absent proof of contrary legislative intention, when the action is a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute.") (internal citation and quotation marks omitted). Moreover, we are "bound to defer to [the agency's] interpretation if reasonable and statutorily permissible." *State of Wis., Dept. of Health and Social Services v. Bowen,* 797 F.2d 391, 397 (7th Cir.1986). Although the effect of the name check could arguably be overbroad in some instances, insofar as it may pick up information that is not "criminal" in nature, we do not believe that makes the name check unreasonable.

**E. Equal Protection**

***9** Plaintiffs allege that USCIS's failure to adjudicate their applications "in a timely manner as compared to other similarly situated applicants" violates their right to equal protection of the laws. (Compl. § 72.) The equal protection component of the Fifth Amendment "essentially is a direction that all persons similarly situated should be treated alike." *Vision Church v. Village of Long Grove,* 468 F.3d 975, 1000 (7th Cir.2006) (citing *Plyler v. Doe,* 457 U.S. 202, 216 (1982)). Where, as here, "no suspect class or fundamental right is involved," we employ a rational basis test. *Id.* at 1000-01. "This standard is extremely respectful of legislative determinations and essentially means that we will not invalidate a statute unless it draws distinctions that simply make no sense." *United States v. Jester,* 139 F.3d 1168, 1171 (7th Cir.1998). In addition, plaintiffs must allege that disparate treatment is the result of intentional and purposeful discrimination. *Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 264-66 (1977).

Plaintiffs rely primarily on *Kaplan* to support their equal protection claim. *See Kaplan,* 481 F.Supp.2d at 393. The plaintiffs in *Kaplan* were humanitarian refugees and asylees who were receiving supplementary security income ("SSI") benefits. *Id.* at 376. Pursuant to 8 U.S.C. § 1612(a)(2), the government terminated their SSI benefits after seven years, even though their applications for naturalization and legal-permanent-residency status were still unresolved. *Id.* at 376-77. Recognizing the potential gap in SSI coverage, USCIS implemented an expedition policy ("Memorandum 22") intended to assist asylees. The plaintiffs alleged, however, that Memorandum 22 was of limited use because USCIS "implement[ed] it unevenly, honoring some expedite requests while ignoring others."*Id.* at 380. The *Kaplan* plaintiffs claimed that "the different timeliness in the processing of humanitarian immigrants' applications violate[d] the Equal Protection Clause."*Id.* at 377. Specifically, the plaintiffs alleged that in some years and in some USCIS offices the application backlogs were greater than others, and that some offices honored expedition requests while others did not. *Id.* at 392. The *Kaplan* court concluded that the plaintiffs could not state a claim for violation of their right to equal protection based on unintended naturalization-application backlogs. *Id.* at 395. The plaintiffs did not allege that the USCIS "intends for backlogs to build up unequally at different times or in different offices."*Id.* The court concluded that the plaintiff could, however, state a claim based on USCIS's arbitrarily uneven application of Memorandum 22. *Id.* at 396. Similarly situated applicants-all of whom were eligible for expedited processing-were treated differently. *Id.*

Here, plaintiffs allege that the "reference" name check is applied to all naturalization applicants. (Compl.¶ 47.) For a significant number of applicants, this process does not delay their applications. (Compl.¶ 33.) For others, including plaintiffs, the name check holds-up their applications for months and even years. But unlike USCIS's uneven application of Memorandum 22 in *Kaplan,* Plaintiffs have not alleged that defendants have purposefully favored one class of applicants over another when implementing the name-check. Instead, plaintiffs allege that the effect of defendants' even-handed application of the name check is that some applications take longer to process. But plaintiffs have not alleged that USCIS intends for this "disparate effect" to occur. *See Kaplan,* 481 F.Supp.2d at 395.

**\*10** Even if plaintiffs had alleged purposeful discrimination, their claim would still fail because USCIS had a rational basis for implementing the name check procedure.[FN9] Plaintiffs allege that the name check only "rarely, if ever" reveals derogatory information that cannot be obtained using faster, more efficient methods. But the question is not whether the name check is good policy; the question is whether it is rational in relation to a legitimate interest. *United States v. Jester,* 139 F.3d 1168, 1171 (7th Cir.1998) ("[W]e will not invalidate a statute unless it draws distinctions that simply make no sense.").[FN10] USCIS has a legitimate interest in ensuring that naturalization benefits are conferred on worthy individuals. *Omeiri,* 2007 WL 2121998, at \*3 ("The purpose of the background checks within the context of the Immigration and Naturalization Act is to ensure that only worthy applicants are granted the privilege of United States citizenship."). We do not believe that the presence of an applicant's name in an FBI file is so unlikely to reveal derogatory information that the records search is irrational.

> [FN9.] Plaintiffs concede as much when they note that defendants may properly distinguish between name checks with a "hit" and those without "hits". (Pl. Opp'n. at 15 n. 7.)

> [FN10.] The Ombudsman's Report generally describes an overtaxed system lacking the resources required to adjudicate the many name check requests that the FBI receives. Moreover, it raises legitimate questions about whether the benefits of the program outweigh its costs. But these are policy issues better addressed to the political branches of government.

### *CONCLUSION*

Defendants' Motion to Dismiss Under Fed.R.Civ.P. 12(50) is granted in part and denied in part. As explained in the order of this date, we grant defendants' motion to dismiss Counts I-V of plaintiffs' complaint. We deny defendants' motion to dismiss Count VI pursuant to Fed.R.Civ.P. 12(b)(1). We have jurisdiction to adjudicate plaintiffs' applications, but nevertheless remand to USCIS. Accordingly, we dismiss Count VI of plaintiffs' complaint requesting adjudication pursuant to § 1447(b).

N.D.Ill.,2007.
Antonishin v. Keisler
Slip Copy, 2007 WL 2788841 (N.D.Ill.)

END OF DOCUMENT

**CERTIFICATE OF SERVICE**

      The undersigned Assistant United States Attorney hereby certifies that in accordance with FED. R. CIV. P. 5, LR5.5, and the General Order on Electronic Case Filing (ECF), the following document:

    DEFENDANTS' POSITION PAPER
    ON THE COURT'S JURISDICTION AND REMAND

was served pursuant to the district court's ECF system as to ECF filers, if any, and was sent by first-class mail on March 7, 2008, to the following non-ECF filers:

    David M. Cook
    Kenneth Y. Geman and Associates
    33 North LaSalle, Suite 2300
    Chicago, Illinois 60602

                                             s/ James M. Kuhn, Sr.
                                             JAMES M. KUHN, SR.
                                             Assistant United States Attorney
                                             219 South Dearborn Street
                                             Chicago, Illinois
                                             (312) 353-1877
                                             james.kuhn @ usdoj.gov